# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

RONALD DEAN DOYLE,

              Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
Social Security,[1]

              Defendant.

No.  C18-3040-LTS

**MEMORANDUM
OPINION AND ORDER**

---

Plaintiff Ronald Dean Doyle seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability income benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-34 (the Act).  Doyle contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period.  For the reasons that follow, the Commissioner's decision will be affirmed.

## I.    BACKGROUND

Doyle was born in 1963.  He completed high school and has previously worked in building and ground maintenance and as a production laborer.  AR 71, 214.  He filed his application for DIB on October 23, 2014, alleging a disability onset date of January 24,

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019.  Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

2014, due to chronic edema[2] resulting in right leg pain, chronic tinnitus,[3] insomnia, loss of hearing in left ear, chronic headaches, his right leg being shorter than the left and high blood pressure. *Id.* at 92. Doyle's claims were denied initially and on reconsideration. *Id.* at 91-121. He then requested a hearing before an Administrative Law Judge (ALJ). ALJ Robert A. Kelly conducted an in-person hearing on May 1, 2017. *Id.* at 63-90. Doyle and a vocational expert (VE) testified. The ALJ issued a decision on June 7, 2017. *Id.* at 42-58. He determined that Doyle was unable to perform any past relevant work. *Id.* at 56. However, he determined that there was other work available in significant numbers in the national economy that Doyle could perform, such as non-government mail clerk, office helper and photocopy machine operator. *Id.* at 57.

Doyle sought review by the Appeals Council and submitted additional evidence, which the Appeals Council made part of the record. *Id.* at 1-7. It denied review on April 10, 2018. *Id.* at 44. The ALJ's decision thus became the final decision of the Commissioner. *Id.* at 1; 20 C.F.R. § 404.981. On June 7, 2018, Doyle filed a motion for leave to proceed in forma pauperis and his complaint seeking review of the Commissioner's decision. The parties have submitted a stipulation of facts and briefed the issues. *See* Doc. Nos. 12, 13, 15, 16. The matter is now fully submitted.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

---

[2] Edema is an accumulation of an excessive amount of watery fluid in cells or intercellular tissues and is used to describe the physical sign of swelling. *See Stedman's Medical Dictionary* 279130 (28th ed. 2006)

[3] Tinnitus is the "[p]erception of a sound in the absence of an environmental acoustic stimulus" such as ringing in the ears. *See Stedman's Medical Dictionary* 921820 (28th ed. 2006).

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. § 404.1572(a).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use

of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 404.1560(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. § 404.1545(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* § 404.145(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education and work experience. *Id.* §§ 404.1512(f), 404.1520(a)(4)(v). The Commissioner must show not

only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. *Id.* At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* § 404.145(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. § 404.1535.

## III. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since January 24, 2014, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: chronic venous insufficiency, obesity, a mood disorder, and a generalized anxiety disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) except the claimant can sit for two hours in an eight-hour workday. He can stand and/or walk for six hours in an eight-hour workday. The claimant cannot climb ladders, ropes, or scaffolds. He can balance, climb ramps or stairs, stoop, crouch, kneel, or crawl occasionally. The claimant cannot work in environments with concentrated exposure to extreme heat, extreme cold, or humidity. The claimant can perform only simple, routine, repetitive work with no more than occasional changes in the general nature of the work setting or work tasks. He can maintain focus, attention and concentration for only up to two hours at a time. He can interact with the public only frequently.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 27, 1963, and he was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

AR 44-57.

## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645.   The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).   The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).   The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).   The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).   Instead, if, after reviewing the evidence, the court finds it "possible to

draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.     DISCUSSION

Doyle argues the ALJ made the following errors:

1.     The RFC is not supported by the record

2.     The ALJ's hypothetical question to the VE was incomplete

3.     The ALJ should have credited Doyle's subjective allegations and the opinions of the psychologists in the record.

*See* Doc. No. 13. I will address these arguments separately below.


### A.     RFC Determination

Doyle argues the RFC determination is not supported by the record because the only physical work-related restrictions from a treating or examining source are from Doyle's treating physician, Dr. Nagel, which the ALJ assigned "little weight." He points out these restrictions were not part of a formal medical opinion that Dr. Nagel provided, but restrictions on Doyle's prior work as a maintenance engineer. *Id.* at 4. He contends the ALJ should have more-fully developed the record by obtaining a physical assessment

of Doyle's ability to function in the workplace on a full-time basis.[4]  *Id.* at 7.  Doyle argues there is no medical evidence to support that he can sit for two hours in an eight-hour workday and stand and/or walk for six hours in an eight-hour workday.  *Id.* at 8.  He contends that if Dr. Nagel's restrictions were "vague" as the ALJ stated, then the ALJ should have followed up with Dr. Nagel or another examining physician as to Nagel's work-related limitations rather than constructing them on his own.

The Commissioner argues substantial evidence supports the ALJ's RFC determination.  He points out that the ALJ is not limited to considering exclusively medical evidence in formulating a claimant's RFC and that the ALJ must base the RFC on all of the evidence in the record.  Doc. No. 15 at 7.  He adds that to the extent Doyle argues additional driving, sitting and standing limitations were warranted, the ALJ considered Dr. Nagel's opinion related to such limitations and gave good reasons for giving it little weight.  The Commissioner argues that Doyle does not challenge the weight the ALJ gave Dr. Nagel's opinions and such an argument should be considered waived.  *Id.* at 8.  In any event, Dr. Nagel's opinion was limited to Doyle's past work, which the ALJ found Doyle could not perform.  *Id.* at 8-9.  The Commissioner argues that the opinions of the state agency medical consultants in addition to the treating notes, objective medical findings, Doyle's own statements and Doyle's work activity support the ALJ's RFC determination.  *Id.* at 9-10.  He notes the RFC determination does not have to be supported by one specific medical opinion.  *Id.* at 10 (citing *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016)).

A claimant's RFC is "the most [he] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  It must be based on all the relevant evidence in the record.

---

[4] While Doyle's RFC assessment also contains mental restrictions, his argument that the RFC assessment is not supported by the record appears to be limited to the physical limitations.  *See* Doc. No. 13 at 4-8.  As such, I will address the physical limitations alone.  In any event, as discussed in more detail *infra* Section V(B), I find that substantial evidence in the record as a whole supports the mental limitations in the RFC as well.

*Id.*; *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (noting the RFC must be based on "all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley*, 829 F.3d at 932 (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). "Where, as here, the claimant proves he cannot perform his past relevant work, the Commissioner has the burden of producing evidence that he has the RFC to perform other jobs." *Id.* (citing *Goff*, 421 F.3d at 790). "However, the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Id.* (alteration and quotation omitted).

The ALJ found Doyle had the RFC to:

> perform a range of light work as defined in 20 CFR 404.1567(b) except the claimant can sit for two hours in an eight-hour workday. He can stand and/or walk for six hours in an eight-hour workday. The claimant cannot climb ladders, ropes, or scaffolds. He can balance, climb ramps or stairs, stoop, crouch, kneel, or crawl occasionally. The claimant cannot work in environments with concentrated exposure to extreme heat, extreme cold, or humidity. The claimant can perform only simple, routine, repetitive work with no more than occasional changes in the general nature of the work setting or work tasks. He can maintain focus, attention and concentration for only up to two hours at a time. He can interact with the public only frequently.

AR 48. The ALJ thoroughly discussed the objective medical evidence, opinion evidence and Doyle's own statements in making this finding. *See* AR 48-56.

Doyle argues that the ALJ should have obtained additional evidence regarding Doyle's physical limitations and ability to perform other jobs besides a maintenance engineer. I disagree. "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Swink v. Saul*, No. 18-1850, 2019 WL 3402477, at *3

(8th Cir. July 29, 2019) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (alteration in original) (citation omitted)). An ALJ does not "have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). "[T]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932. "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's [RFC] findings." *Id.* (quoting *Johnson v. Astrue*, 628 F.3d 991, 995) (8th Cir. 2011)).

In assessing Doyle's RFC, the ALJ discussed the medical evidence in the record. He noted that following Doyle's 2002 motorcycle accident, the record did not reflect any interim treatment until Doyle began seeing Dr. Nagel in 2014 for leg swelling. AR 49. The ALJ noted that Doyle did not mention any of his other alleged symptoms of significant pain, headaches, tinnitus and sleep difficulties to Dr. Nagel, even though he reported them to the Social Security Administration and the consultative psychologist. AR 51. Dr. Nagel made referrals or offered to make referrals for further testing regarding Doyle's leg swelling, but the ALJ noted the record did not contain records from these providers. The record was also absent of notes regarding any physical therapy in which Doyle was purportedly participating. *Id.*

The ALJ also discussed Doyle's subjective allegations and the objective medical evidence. He found the totality of the medical records were consistent with light work limited to sitting two hours in a workday with occasional postural functions. AR 52. The ALJ found that Doyle's edema and obesity called for limitations to avoid extreme heat, cold and humidity and that he should not climb ladders, ropes or scaffolds. He stated, "[t]he claimant's paucity of treatment, failure to identify other medical sources, and inconsistent reports to doctors exclude limiting him further." *Id.* He noted the RFC accommodated Doyle's hypertension and his more recent allegations of back or neck pain.

I have reviewed the record (including medical evidence) related to Doyle's physical limitations and find the ALJ's assessment is supported by substantial evidence. Particularly with regard to Dr. Nagel, the treatment notes primarily focus on Doyle's complaints of leg swelling. Dr. Nagel first saw Doyle on January 23, 2014 (the day before Doyle's alleged onset date). AR 329. Doyle complained of swelling and pain in his lower right leg. *Id.* Dr. Nagel noted Doyle's motorcycle accident in 2002 and that Doyle noticed the swelling in his leg had worsened over the past year as his job had changed and required more driving and sitting for long periods of time. *Id.* at 330. After this initial examination, Dr. Nagel noted: "He will be restricted at work for avoiding prolonged sitting or standing. I think it will be better to stay active." *Id.* at 331. He ordered deep venous thrombosis (DVT) testing. *Id.* This testing was negative.[5] AR 339. Dr. Nagel saw Doyle again on February 10, 2014. *Id.* at 327-28. He noted that Doyle was "still working with [physical therapy] and is continuing therapy exercises at home as well." *Id.* at 328. Dr. Nagel continued Doyle's medications and physical therapy and referred him to Dr. Kakade for his leg swelling. *Id.*

Dr. Kakade saw Doyle on February 18, 2014. *Id.* at 326. Dr. Kakade documented the swelling, explaining the normal test results, and noted Doyle's swelling was most likely due to chronic venous insufficiency following his injury. He instructed Doyle to follow up as needed. *Id.*

Doyle went back to Dr. Nagel on March 10, 2014. *Id.* at 324. He reported greater range of motion with his knee and foot, but still complained of some pain. *Id.* at 325. He told Dr. Nagel that the swelling increased the more he was on his foot or the more he had to sit and drive for long periods of time. *Id.* He had been released from physical therapy. Dr. Nagel noted that Doyle was "still having moderate swelling in the right leg

---

[5] A second testing was done on July 31, 2014, which was also negative for DVT, but significant venous reflux was present in the right and left common femoral vein and left great saphenous vein. AR 341.

with the restrictions on sitting and driving for long time periods. It is unknown if this would get worse again if restrictions were lifted." *Id.* Doyle was advised to wear the support stockings recommended by physical therapy and to avoid long episodes of sitting or standing. *Id.*

> Dr. Nagel saw Doyle again on April 4, 2014. AR 323. His treatment note states:
>
> There was a misunderstanding regarding his ability to work on [his right] leg. I told him that he could sit or stand for up to 30 minutes time but then they [sic] would have to have a break to move around to help circulation. He interpreted that as a 30-minute break. On the flipside, his employer has specifics of his job duties that includes one note saying handle cleaning of the shop areas at all four Midland locations, and those locations are up to 60 to 90 miles apart. He would require frequent breaks in his driving to get there. He is concerned about that and feels if he could work in Humboldt only, that would solve a lot of the problems. He notes that if he is on it for any length of time, he does develop some discomfort and numbness. It is slightly better since being on medication but symptoms do persist.

*Id.* Dr. Nagel referred Doyle to a vascular specialist and gave him a note explaining that he will stay off work until he sees the specialist and that if he does work, he should not drive more than 30 miles. *Id.*

Dr. Nagel saw him again on April 9, 2014. *Id.* at 322. Dr. Nagel noted: "He is still working with his employer to understand what they want from him versus the restrictions we have talked about with no longer than 30 minutes of sitting or driving at a time without time to move about to help with circulation." *Id.* Dr. Nagel concluded that Doyle would "try to further explain to his employer his restrictions." *Id.*

The final note from Dr. Nagel in the record is dated August 1, 2014. *Id.* at 319. He offered a referral to Mayo Clinic or Iowa City for further evaluation of his swelling after seeing the specialist. *Id.* at 320. He encouraged Doyle to walk regularly and elevate his leg when able. *Id.*

In sum, Dr. Nagel's notes show that Doyle complained only of leg swelling with associated pain and noticed that it worsened with prolonged sitting required by his job.

After objective testing confirmed no issues with the hardware in his leg or some other cause for the swelling, Dr. Nagel wrote a note for Doyle's employer recommending that Doyle avoid prolonged sitting. Because the ALJ does not limit Doyle to sedentary work or work that requires prolonged sitting, it is unclear what other physical limitations Doyle believes are unaccounted for in the ALJ's RFC. As noted above, he did not make any other complaints to Dr. Nagel or allege any other limitations.

To the extent Doyle challenges the weight assigned to Dr. Nagel's opinions, I find no error. These "opinions" are actually doctor's notes that Dr. Nagel provided for Doyle's employer, explaining the need for Doyle to avoid prolonged sitting. The ALJ assigned these "opinions" little weight but also found that Doyle could sit up to two hours during an eight-hour workday.

While Dr. Nagel suggested Doyle limit his sitting, standing and driving to 30 minutes at a time with a break to move around, he also encouraged Doyle to remain active and do more walking. AR 54. The ALJ found Dr. Nagel's opinions were vague as they did not specify the length of time to move about after 30 minutes of sitting, standing or driving. *Id.* The ALJ also noted that Dr. Nagel even questioned whether the swelling would get worse if the sitting, standing or driving restrictions were lifted. *Id.* The fact that the ALJ found Dr. Nagel's opinions to be vague does not mean that the ALJ could not determine Doyle's work-related limitations from the totality of the evidence in the record. The ALJ is only required to recontact a treating physician "when the medical evidence received from them is inadequate to determine a claimant's disability." *Cox*, 495 F.3d at 619. While the RFC is a medical question and "must be supported by some medical evidence of the claimant's ability to function in the workplace," the ALJ "is not limited to considering medical evidence exclusively." *Id.* (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). The RFC must be based on all the evidence in the record but need not be supported by a specific medical opinion. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002).

In assessing Doyle's physical limitations, the ALJ discussed treatment notes from Doyle's chiropractor, the Iowa Heart Center, Doyle's subjective complaints, the objective medical evidence and the state agency medical consultants' opinions in addition to Dr. Nagel's opinions and treatment notes. AR 48-55. He noted Doyle's report that he did laundry, prepared meals, washed dishes, shopped, attended auctions, read, listened to music, watched movies, went to the post office, paid bills and did limited work outside. *Id.* at 48. However, on requesting reconsideration of the decision finding him not disabled, Doyle claimed he no longer prepared meals, cleaned, went to the movies or went to places with crowds and that his headaches, tinnitus, and pain, numbness and swelling in his right foot and leg had increased. *Id.* at 49.

The ALJ noted that the record showed a few visits to a chiropractor in the summer of 2015. *Id.* at 51. The chiropractor noted hypertonicity[6] in the legs, trapezius and suboccipital areas and that Doyle complained of pain in his low back and upper thoracic areas. *Id.* After Doyle reported no significant improvement with adjustment and acupuncture, the chiropractor found Doyle had reached maximum medical improvement. *Id.* Doyle saw the chiropractor again in March 2016, claiming to have the same symptoms. The chiropractor noted right leg edema and muscle tension throughout the spine with moderate hypertonicity. *Id.* The ALJ noted this was the extent of the records from Doyle's chiropractor. *Id.* Doyle denied numbness in his extremities to treating sources at the Iowa Heart Center. *Id.* His examination there also revealed no edema. *Id.* Doyle also did not make any reports of pain, headaches, tinnitus or sleep difficulties to these treating sources. *Id.*

With regard to Doyle's subjective allegations,[7] the ALJ noted Doyle stated he would drive up to 400 miles in a day beginning in January 2013 when his prior employer

---

[6] "An increased effective osmotic pressure of body fluids." *Stedman's Medical Dictionary*, 426770 (28th ed. 2006).

[7] This aspect of the ALJ's decision is discussed in greater detail *infra* Section V(C).

merged with another company. *Id.* at 52. The ALJ found it difficult to believe that Doyle would drive this much and have time to perform work at the four locations he identified. *Id.* Nonetheless, Doyle reported daily travel between those four locations for a year and, prior to that, worked 11 years following his motorcycle accident. *Id.* The ALJ also noted that it appeared from the evidence that Doyle had sought treatment and eventually stopped working due to his desire to live/work in a particular location rather than reasons related to his impairments. *Id.*

The ALJ then considered the objective evidence related to Doyle's physical limitations. He noted it was negative for DVT, but did show reflux. It showed his fracture was healed and not impending on soft tissues. *Id.* It did show edema of the right leg. Doyle's body mass index readings also established obesity. *Id.* The ALJ found the totality of the medical records supported a range of light work limited to sitting two hours in a workday. His edema and obesity warranted limitations of no work in extreme heat, cold or humidity. He also could not climb ladders, ropes, or scaffolds. The ALJ determined these limitations also accommodated his hypertension and any recent allegations of back or neck pain. He found no other limitations were warranted given the paucity of treatment, failure to identify other medical sources and inconsistent reports to doctors. *Id.*

Finally, the ALJ considered the state agency medical consultant opinions. AR 54. He noted they found Doyle had severe chronic venous insufficiency and obesity and that he could perform a range of light work with sitting limited to two hours in a workday and standing and/or walking six hours in a workday. He could climb ramps or stairs, balance, stoop, crouch, kneel or crawl occasionally. He could not climb ladders ropes, or scaffolds. He also could not work in environments with concentrated exposure to extreme heat, cold or humidity. They found his allegations of high blood pressure, headaches and hearing limitations were not severe. *Id.* The ALJ gave these opinions significant weight stating: "The evidence supports this functional capacity, and the

physicians provided a reasoned discussion of the evidence available at the time and the basis for the opinions."[8]  *Id.*

I find that the ALJ fairly and fully developed the record and that the RFC is supported by substantial evidence in the record as a whole.   While it is the Commissioner's burden to prove that a claimant can perform work available in the national economy at Step Five, it is the claimant's burden to prove his RFC.  *See Stormo*, 377 F.3d at 806 ("Stormo also argues that, if the opinions were unclear or seemed to lack a foundation, the ALJ was duty-bound to further develop the record by asking the treating physicians for more information. The ALJ's duty to develop the record, however, does not extend so far. The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").   Here, the evidence was sufficient for the ALJ to determine Doyle's work-related limitations without further development of the record.   Doyle's physical examinations were normal in that they did not reveal any decreased strength or sensation or problems with his gait.   While swelling and some tenderness was confirmed and Doyle later reported pain, these issues could be avoided (by Doyle's own admissions as well as the recommendations by medical professionals) with limitations on prolonged sitting.

The ALJ included such a limitation in the RFC and other relevant limitations to account for these issues as well as his obesity, hypertension and complaints of back or neck pain.   The absence of evidence documenting further physical limitations falls on Doyle, not the ALJ.  *See Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (quoting *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994)) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give

---

[8] While the ALJ did not mention it in his decision, the state agency medical consultants concluded that even if Doyle needed to change positions every 30 minutes, this could be accommodated by the normal breaks in the workday.  *See* AR 116.  The ALJ gave these opinions "significant weight."  *Id.* at 54.

sufficient medical evidence to determine whether the claimant is disabled."); *Baldwin*, 349 F.3d at 556 ("It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC."). The ALJ considered all of the relevant evidence in the record in determining Doyle's RFC. There is no indication that a crucial issue was undeveloped such that the ALJ could not determine whether Doyle was disabled without further information by way of a consultative examination. For all of these reasons, I find the ALJ's RFC determination is supported by substantial evidence in the record as a whole.

## B.    *Hypothetical Question to the VE*

Doyle argues the hypothetical question to the VE was incomplete for many of the same reasons he argues the RFC was not supported by substantial evidence. *See* Doc. No. 13 at 9-10. First, he argues that the only opinion evidence supporting the ALJ's RFC determination came from the non-examining state agency medical consultants. In particular, he argues that Dr. May's opinion contradicts that of Dr. Nagel. Dr. May found Doyle would be able to accommodate change in positions from sitting to standing in the normal breaks of the workday. AR 116. He noted that even with sitting for 30 minutes at a time, he would still be able to stand and walk six hours in a normal workday with normal breaks. *Id.* Doyle argues that the "treating physician rule" applies to Dr. Nagel's opinion because Doyle's case was filed prior to March 27, 2017. Doc. No. 13 at 10.

Doyle also argues the lack of a further restriction within the two hours of sitting contradicts the treating physician opinion that he should sit for no more than 30 minutes at a time. Doc. No. 13 at 10. He suggests that the ALJ indirectly found that a period of five minutes was sufficient to account for the need to change positions and that this finding is not supported by any medical evidence. *Id.* at 8. While this "restriction" is not part of the RFC, he contends the ALJ relied on it in the second hypothetical question presented to the VE. *Id.* Finally, Doyle contends the ALJ determined that "pace" was a deficiency

supported by the record, yet failed to include a limitation on pace in the RFC and hypothetical question to the VE. *Id.* at 13.

The Commissioner argues that with regard to Doyle's physical limitations, the ALJ was not required to include a limitation that Doyle could sit only 30 minutes at a time because the state agency consultants both found the need to change positions would be accommodated by the normal breaks in the workday. *See* Doc. No. 15 at 9 (citing AR 98, 114). With regard to Doyle's mental limitations, the Commissioner argues that the RFC and hypothetical questions to the VE encompassed limitations identified by the consultative and state agency psychologists that are supported by the record. *Id.* at 16-17. The consultative examiner, Dr. Jordison, opined that Doyle was mentally capable of carrying out instructions if he were physically able to do them at his own pace, but thought that he would have difficulty with tasks requiring much concentration or faster pace. AR 383. She also noted Doyle would have difficulty trying to follow several instructions given at one time and would have difficulty maintaining pace. The state agency consultants discussed Dr. Jordison's opinion in their opinions. AR 103, 118. The ALJ assigned partial weight to each of these opinions. AR 55-56. The Commissioner points out that Doyle fails to identify what kind of pace restrictions he believes were improperly excluded from the hypothetical. Doc. No. 15 at 18.

"The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (internal quotation and citation omitted). "Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Collins v. Astrue*, 648 F.3d 869, 872 (8th Cir. 2011). *See also Clay v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005) (concluding the ALJ did not err by excluding additional restrictions identified by the treating provider as the ALJ concluded the additional restrictions were not supported by the evidence).

The ALJ posed the following three hypotheticals, in which he asked the VE to assume a person of Doyle's age, education and work experience:

- Full range of light work. Can stand, walk up to six hours in an eight-hour workday. Can sit up to two hours in an eight-hour workday. Never climb ladders, ropes or scaffolds. All other postural only occasionally. No concentrated exposure to extremes of heat, cold or humidity. Performing only simple, routine and repetitive tasks. No more than frequent interaction with the general public. Able to maintain focus, attention and concentration for only up to two hours at a time, due to pain severe enough to interfere with attention and concentration. Limited to only simple work tasks. No more than occasional changes in the general nature of the work setting or work tasks. *See* AR 84.

- Light work in that he could do the lifting and carrying restrictions of light, but limit standing and walking to 4 hours in an 8-hour workday, with a 5-minute sit option every 60 minutes of standing and walking and limiting sitting to 4 hours in an 8-hour workday, with a 5-minute stand option every 60 minutes of sitting. The other limitations are as were listed in the first hypothetical. *See* AR 85-86.[9]

- Same limitations as the second hypothetical, but then add in addition to normal breaks, at least two unscheduled breaks each workday for up to 15 minutes in duration. With those limitations, could the individual perform any jobs in the national economy? *See* AR 88.

The VE identified the following jobs that would be available for each hypothetical:

- First hypothetical – photocopy machine operator, mail clerk and office helper

- Second hypothetical – office helper, parking lot attendant and order clerk. The VE also noted that sedentary jobs would allow someone to stand at the work station and those included telephone quotation clerk, government clerk and document preparer.

- Third hypothetical – no competitive work

---

[9] The ALJ clarified that the individual would remain on task during the five minutes of standing or sitting. AR 87.

AR 84-88. The ALJ's RFC contains the limitations identified in the first hypothetical and the ALJ relied on the jobs identified by the VE in response to the first hypothetical to conclude at Step Five that there are jobs that exist in significant numbers in the national economy that Doyle could perform. *Id.* at 57.

With regard to the additional sitting limitation of no more than 30 minutes at a time, the ALJ did not include such a limitation in the RFC determination. To the extent Doyle argues he was required to include this limitation due to the "treating physician rule," I disagree. The limitation came from Dr. Nagel in response to Doyle's complaints that his swelling seemed to increase with prolonged sitting, which was a requirement of the job he had at that time. Dr. Nagel wrote Doyle's employer a note recommending that Doyle be permitted to move around after every 30 minutes of sitting. Dr. Nagel did not make this recommendation in response to a request about Doyle's general work-related limitations. The ALJ assigned Dr. Nagel's opinion little weight stating it was vague and did not specify the length of time to move about after 30 minutes of sitting, standing or driving. AR 54. The ALJ also noted that Dr. Nagel even wrote in his note that he questioned whether the swelling would get worse if the sitting, standing or driving restrictions were lifted. *Id.*

As noted above, I find that the ALJ's assessment of Dr. Nagel's opinion and the ultimate RFC is supported by substantial evidence. There was no need to include an additional limitation of being able to move every 30 minutes of sitting in light of the state agency medical consultant opinions that such movement would be accommodated by the normal breaks in the workday.[10] In other words, even if Doyle could only sit 30 minutes

---

[10] This opinion states:

> Claimant's right leg edema from chronic venous insufficiency in combination with class II obesity can cause exertional limitations. Claimant would be able to accommodate change in positions from sitting to standing in the normal breaks in the workday. Even with sitting for 30 minutes at a time, claimant would still be

at a time, standing provided the necessary relief and the ALJ limited Doyle to jobs with six hours of standing/walking and two hours of sitting assuring that Doyle would not be sitting for the majority of the workday as he did in his previous job. While Dr. Nagel was appropriately identified as a treating physician and his opinion was subject to 20 C.F.R. § 404.1527(c)(2)[11] (presumably the "treating physician rule" that Doyle refers to), that does not mean his opinion must be given controlling weight.[12] *See Stormo*, 377 F.3d at 805-06 ("Merely concluding that a particular physician is a treating physician, therefore, is not the end of the inquiry. Such opinions are given less weight if they are

---

able to stand and walk 6 hours in a normal workday with normal breaks. Claimant would be able to perform activities outlined in the physical RFC.

AR 100. Dr. May affirmed this opinion on reconsideration. *Id.* at 116. The ALJ gave these opinions "significant weight." *Id.* at 54.

[11] Because Doyle filed his claim prior to March 27, 2017, this regulation applies. For claims filed after March 27, 2017, the standards for evaluating opinion evidence may be found at 20 C.F.R. § 404.1520c.

[12] 20 C.F.R. § 404.1527(c)(2) provides:

Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data."). The ALJ provided good reasons, supported by substantial evidence in the record as a whole, for giving Dr. Nagel's opinion less than controlling weight. Medical evidence also supports the ALJ's decision to exclude a limitation related to the need to change position every 30 minutes as the state agency medical consultants indicated that any need to change position could be accommodated by the normal breaks in the workday.

With regard to Doyle's argument that a "pace" limitation should have been included in the hypothetical question, Doyle relies primarily on Dr. Jordison's opinion. *See* Doc. No. 16 at 2 (noting that Dr. Jordison said "[p]ace would be a problem if the job required concentration."). Dr. Jordison (a one-time examining psychologist) made the following opinion regarding any mental limitations:

> Ron would typically have the ability to remember and understand instructions, procedures and locations, but currently he would have some difficulty due to his pain and emotional status. He would do better following written instructions he could refer back to. He would be mentally capable of carrying out instructions if he were physically able to do them and do them at his own pace, but he would have difficulty with tasks if it required much concentration or a faster pace. He would also have difficulty trying to follow several instructions given at one time. He would have difficulty maintaining pace. Ron would be able to interact appropriately with supervisors, co-workers and the public. He was pleasant and cooperative during the interview. He would have some difficulty dealing with stress and change in the workplace but he does have some appropriate coping skills.

AR 383. The ALJ analyzed Dr. Jordison's opinion as follows:

> Dr. Jordison indicated the claimant typically could remember and understand instructions, procedures, and locations, he had some current difficulty due to pain and difficulties concentrating. He would have difficulties with tasks that required sustained concentration or a faster pace. He could not follow multiple instructions at a time (Exhibit 5F/4). This conclusion appears to consist primarily of adopting at face value the claimant's allegations of his subjective symptoms. Allegations of reduced pace or difficulties maintaining pace are given less weight. Although the

claimant was slow in spelling backwards, that could be due to lapses in concentration, as much as pace. The psychologist indicated the claimant could interact appropriately. He would have difficulty dealing with stress and change, although he had some coping skills and adequate judgment (Exhibit 5F/4). This opinion was given more weight, and it supports a finding of work with no more than occasional changes in the general nature of the work or the setting.

*Id.* at 55.    Other opinions concerning Doyle's mental limitations came from the state agency psychologists.  Dr. Brandon provided the following opinion:

The claimant's concentration difficulties are such that they will cause some interruption to his ability to keep pace, remember, understand, and carry out detailed instructions, and maintain concentration for extended periods. He also reports social avoidance due to irritability and frustration that others have with him.  However, the claimant retains the capacity to perform simple, repetitive tasks consisting of 1 to 2 step commands in a work setting with reduced social interaction.

*Id.* at 103.  Dr. Shafer did not identify any additional limitations on reconsideration. *Id.* at 119.   With regard to the state agency psychologists, the ALJ stated:

The State agency psychologists concluded the claimant could have difficulties in keeping pace, performing detailed instructions, and maintaining concentration for extended periods.  He could interact with other[s] appropriately.  The claimant retains the capacity to perform simple repetitive tasks of one or two-step commands in a work setting with limited social interaction (Exhibit 2A/11-12; Exhibit 4A/12-13).  This opinion is given some weight.  There is minimal evidence of the need for limited social interaction.  The evidence does support a finding that the claimant can perform simple, routine, repetitive work with no more than frequent interaction with the public and no more than occasional changes in the general nature of the work task and work setting.

*Id.* at 56.

I find no error with respect to the ALJ's consideration of any "pace" limitations or his evaluation of the opinions of Dr. Jordison and the state agency psychological consultants.  The ALJ explicitly gave the pace limitations identified by Dr. Jordison less weight, concluding that any deficiency in the objective testing could be attributed to a

lapse in concentration as much as pace. *Id.* at 55. The state agency consultants also attributed difficulties with pace due to a lack of concentration. *See* AR 103 ("The claimant's concentration difficulties are such that they will cause some interruption in his ability to keep pace, remember, understand, and carry out detailed instructions, and maintain concentration for extended periods.").

The Eighth Circuit has concluded that an ALJ's hypothetical question to a VE is deficient if it includes a limitation of simple work, but no additional limitations relating to concentration, persistence or pace if such limitations are supported by the record. *See Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996). In *Newton*, the ALJ found the claimant often had deficiencies of concentration, persistence or pace, but that he could maintain concentration and attention for simple work. *Newton*, 92 F.3d at 691. The ALJ's hypothetical question to the VE included only "a capacity for simple jobs" related to the limitations in concentration, persistence or pace. *Id.* at 694. There was no dispute in the medical evidence or the ALJ's decision that the claimant "often" had deficiencies of concentration, persistence or pace. *Id.* at 695. Upon questioning from the claimant's attorney at the hearing, the VE noted that the claimant's concentration and persistence problems "related to basic work habits needed to obtain employment" and that a moderate deficiency in these areas "would cause problems on an ongoing daily basis." *Id.* The Eighth Circuit thus concluded that the VE's testimony may have been different if the hypothetical had included concentration, persistence and pace limitations credited by the ALJ. *Id.* It remanded the case for the ALJ to include these deficiencies in the hypothetical to the VE. *Id.*

Here, unlike *Newton*, the ALJ did not find that deficiencies in pace were entirely credible. *See* AR 55. He relied on the state agency psychologists' opinions that his "concentration difficulties are such that they will cause some interruption to his ability to keep pace, remember, understand, and carry out detailed instructions." *Id.* at 103. Accordingly, the ALJ included a limitation in the RFC and the first hypothetical that Doyle could maintain focus, attention and concentration for only up to two hours at a

time. *Id.* at 48. Because the ALJ found any pace limitations were tied to concentration and included a concentration limitation in the RFC and hypothetical, any limitations in pace are sufficiently accounted for.

This is similar to the situation in *Harvey v. Colvin*, 839 F.3d 714, 717 (8th Cir. 2016), a case cited by both parties. In *Harvey*, the ALJ posed a hypothetical question including "simple, routine, and repetitive work that doesn't require any close attention to detail or use of independent judgment on the job." *Harvey*, 839 F.3d at 716. These limitations were included in the ultimate RFC. The claimant argued the RFC failed to incorporate her doctor's observations about her slow pace. *Id.* at 717. The court disagreed stating: "The ALJ expressly incorporated into the RFC work-related limitations suggested by medical source opinions regarding Harvey's slow pace, including Dr. Tafish's opinion that Harvey might need additional training time and Dr. Mokri's opinion about Harvey's memory and cognitive decline." *Id.*

Similarly here, the ALJ incorporated limitations related to Doyle's pace by including a limitation on focus, attention and concentration because the medical evidence and opinion evidence suggested pace deficiencies were attributed to his difficulties in concentration. As such, I find the ALJ's first hypothetical question to the VE included the "concrete consequences" of Doyle's deficiencies and therefore, constitutes substantial evidence. *See McKinney v. Apfel*, 228 F.3d 860, 865 (8th Cir. 2000) (quoting *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)) ("[t]testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.").

## C.   *Doyle's Subjective Allegations*

Doyle argues the ALJ should not have discredited his subjective allegations based on an alleged failure to follow up with Dr. Willerth for services. Doc. No. 13 at 10. Doyle points out that it is clear from the record that he saw Dr. Willerth, even if treatment notes from this visit were not included in the record. Dr. Nagel's treatment note dated

August 1, 2014 states: "Saw Dr. Willerth yesterday for the swelling." AR 319. There is also a record showing that Dr. Willerth conducted a Lower Extremity Venous Duplex procedure demonstrating that both the right and left legs suffered from significant venous reflux. Doc. No. 13 at 11 (citing AR 374). Doyle argues that failure to pursue a recommended course of treatment should not have been used as a reason to discredit his subjective allegations.

The Commissioner argues that this is one inconsistency the ALJ identified among many factors the ALJ considered in evaluating Doyle's subjective allegations. Doc. No. 15 at 22-23. Moreover, the Commissioner notes that the ALJ did acknowledge the vascular study Dr. Willerth performed on July 31, 2014. *See* AR 50. He attributes this to a harmless oversight by the ALJ given the other factors the ALJ discussed in evaluating Doyle's subjective allegations. He contends the other reasons provided by the ALJ are supported by substantial evidence. Doc. No. 15 at 23-24. These include: Doyle's lack of treatment with Dr. Nagel after December 2014, Doyle quitting work for reasons other than his impairment, Doyle's admission to applying for about 35 other jobs after his alleged onset date, objective medical findings including vascular evaluations that were negative for DVT and x-rays showing a well-healed fracture without hardware complications. *Id.* The Commissioner points out that Doyle has not challenged the ALJ's other reasons for finding Doyle's subjective complaints not entirely credible. *Id.* at 24. He argues I should defer to the ALJ's credibility determination. *Id.*

When examining a claimant's subjective complaints, an ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication and (5) functional restrictions (the *Polaski* factors). *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Other factors include the claimant's "relevant work history and the absence of objective medical evidence to support the complaints." *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). While the ALJ must consider each of these factors, it is not necessary for the ALJ to explicitly discuss each factor. *See*

*Goff*, 421 F.3d at 791. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001). "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

Here, the ALJ identified the *Polaski* factors and discussed inconsistencies between Doyle's complaints and evidence in the record throughout his decision. AR 49. With regard to the medical evidence, the ALJ noted that Doyle did not seek any treatment following rehabilitation for his fractures from his motorcycle accident in 2002 until he saw Dr. Nagel on January 23, 2014. *Id.* While edema was identified in both legs, objective testing showed his fracture was completely healed with "a mature callus and no evidence of hardware failure or irritation of the soft tissues." *Id.* at 50. Later objective testing by Dr. Willerth showed significant reflux in the right and left femoral veins. *Id.* The ALJ noted that Doyle denied numbness in his extremities to treating sources at the Iowa Heart Center even though he had reported such symptoms to Dr. Nagel. *Id.* at 51. He also noted that Doyle seldom mentioned complaints of significant pain, headaches, tinnitus and sleep difficulties to Dr. Nagel or the cardiac treating sources, even though he made such complaints to the Social Security Administration and the consultative psychologist. *Id.* The ALJ noted that gait was seldom mentioned in the record even though Doyle alleged his ability to walk was limited. *Id.* No problems with sitting, standing or walking were observed at Doyle's initial interview. *Id.* The ALJ noted that in addition to the lack of records from Dr. Willerth,[13] there were no physical therapy records, records from head and neck scans that had been ordered, or records from any of the referrals that Dr. Nagel offered. *Id.*

---

[13] As noted by the parties, this appears to be an oversight by the ALJ as the objective medical evidence from Dr. Willerth was discussed earlier in the ALJ's decision. AR 50-51.

With regard to Doyle's complaints of difficulties driving, the ALJ noted that Doyle reported he drove up to 400 miles a day after his employer merged with another company in January 2013. *Id.* at 52. The ALJ found that Doyle's failure to see a doctor for a year after the merger is not consistent with the symptoms he was claiming at that time. The ALJ also found it unlikely that Doyle drove 400 miles in a workday and also had time to perform work at the four locations he identified. *Id.* Nonetheless, the ALJ noted that Doyle reported daily travel among these four locations for a year and prior to that, he had worked for more than 11 years after his motorcycle accident in August 2002. *Id.* The ALJ then explained that Doyle told Dr. Jordison in January 2015 that his employer was imposing changes that required Doyle to move to Jefferson, Iowa, or drive there every day to report for work. *Id.* Doyle reported to Dr. Nagel that many problems would be solved if he could stay in Humboldt, Iowa. The ALJ stated this suggested it was Doyle's desire to stay in Humboldt or not make the daily drive to Jefferson, rather than his impairments, that caused him to seek treatment and stop working. *Id.*

The ALJ also noted Doyle had applied for 35 other jobs after leaving his previous job. *Id.* at 53. He also had not sought treatment for his alleged mental symptoms before or after the psychological consultative examination. *Id.* at 54. In analyzing the physical aspects of Doyle's RFC, the ALJ noted: "The claimant's paucity of treatment, failure to identify other medical sources, and inconsistent reports to doctors exclude limiting him further." *Id.* at 52. The ALJ discussed other *Polaski* factors but did not indicate that such factors negatively affected the credibility of Doyle's subjective allegations.

Doyle is correct that a failure to follow up with Dr. Willerth is not a good reason to discredit Doyle's subjective allegations. As Doyle and the Commissioner point out, the ALJ discussed testing performed by Dr. Willerth earlier in his decision. *See id.* at 50. However, this was not the ALJ's only reason for concluding that Doyle's subjective complaints were not entirely credible. As noted above, the ALJ also pointed to a lack of treatment records from other referrals that Dr. Nagel made, comments by Doyle that suggested he left his job due to reasons other than his impairments, inconsistent reports

29

of symptoms to various treating providers and objective medical evidence that suggested Doyle's impairments were not as severe as alleged. All of these constitute good reasons supported by substantial evidence in the record as a whole for discounting the severity of Doyle's subjective allegations. As such, I will defer to the ALJ's credibility finding. *See Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth.") (internal quotation marks and citation omitted).

## VI.    CONCLUSION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Doyle was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the final decision of the Commissioner is **affirmed**. Judgment shall enter against Doyle and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 22nd day of August, 2019.

_____
Leonard T. Strand, Chief Judge